IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

401 NORTH CHARLES, LLC,      *

     Plaintiff,      *

            Civil Action No. RDB-17-0872

     v.      *

SONABANK,      *

     Defendant.      *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This case arises from Plaintiff 401 North Charles LLC's ("North Charles" or "Plaintiff") allegations that Defendant Sonabank breached the terms of a promissory note, deed of trust, and other loan documents. (Compl., ECF No. 1.) Currently pending before this Court is Plaintiff's Motion for Leave to Amend the Complaint, which seeks to add four new Plaintiffs and four new claims. (ECF No. 34.) The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated below, Plaintiff's Motion for Leave to Amend the Complaint (ECF No. 34) is DENIED.

## BACKGROUND

The facts of this case have been discussed previously in a Memorandum Order of this Court. (ECF No. 13.) This Memorandum Opinion provides a brief summary of the facts as alleged in the Complaint. (ECF No. 1.) Plaintiff claims that Defendant Sonabank breached the terms of a promissory note, deed of trust, and other loan documents by charging North Charles arbitrarily inflated late fees and refusing to accept satisfaction of the loan amount. On April 7, 2006, Plaintiff obtained a loan (the "Loan") from Sonabank's predecessor, Greater

Atlantic Bank, to purchase property located at 401 North Charles Street, Baltimore, Maryland (the "property"). (*Id.* at ¶ 6.) A Secured Term Promissory Note (the "Note") in the principal amount of $1,200,000.00 made by North Charles in favor of Greater Atlantic Bank sets forth Plaintiff's payment obligations. (*Id.* at ¶ 7.) Plaintiff's commitments under the Note were secured by, among other things, a Deed of Trust in favor of Greater Atlantic Bank on the Property. (*Id.* at ¶ 8.) In 2009, Sonabank purportedly acquired rights to the Loan, the Note, and the Deed of Trust and other related documents (collectively, the "Loan Documents"). (*Id.* at ¶ 9.)

In 2016, North Charles sought to refinance the Loan with another lender. (*Id.* at ¶ 11.) As part of any refinancing agreement, all amounts owed under the Note to Sonabank would be paid; in turn, Sonabank would release its liens under the Deed of Trust and other security interests, encumbrances, and obligations related to the Loan and the Loan Documents. (*Id.*) North Charles alleges that each time it attempted to close on refinancing efforts with a third-party lender, Sonabank demanded "late fees" in various arbitrary amounts, ranging as high as a "late charge balance" of $99,844.52. (*Id.* at ¶ 14.) North Charles further alleges that Sonabank, despite North Charles's requests, refused to explain how it calculated the late fees or provide authority for charging them under the Loan provisions. (*Id.* at ¶ 15.) Sonabank allegedly refused to permit satisfaction of the Loan and release of its claimed lien on the Property without requiring payment of the late charge balance. (*Id.* at ¶ 20.)

North Charles claims that the late charge is unlawful and are not permitted by the Loan Documents. (*Id.* at ¶¶ 21-22.) The Original Complaint list two Counts sounding in breach of contract. Under Count I, North Charles demands that Sonabank specifically perform its

contractual obligations by releasing the Deed of Trust and any other liens it holds against Plaintiff's property in exchange for satisfaction of the loan balance, excluding the late charge balance. (*Id.* at ¶¶ 23-30.) Under Count II, North Charles demands $75,000.00 in damages together with interest, costs, and attorneys' fees, and such other relief as this Court deems proper. (*Id.* at ¶¶ 31-37.)

On February 26, 2018 this Court issued a Memorandum Order (ECF No. 13) denying Defendant's Motion to Dismiss (ECF No. 5) and Motion for Leave to File Supplemental Memorandum of Law (ECF No. 10.)  On June 15, 2018, in accordance with the briefing schedule set forth in an Order of this Court (ECF No. 33), Plaintiff filed the pending Motion for Leave to Amend the Complaint, seeking to add four additional plaintiffs and to assert four new claims. (ECF No. 34).

## STANDARD OF REVIEW

A plaintiff may amend his or her complaint once as a matter of course before a responsive pleading is served, or within twenty-one days of service of a responsive pleading or motion under Federal Rule of Civil Procedure 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a).  While Rule 15(a) requires that leave "shall be freely given when justice so requires," *id.*, a district court may deny leave to amend "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Center v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010). "Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006).  An amendment is futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson*

*v. Oroweat Foods Co.,* 785 F.2d 503, 510 (4th Cir. 1986). As this Court has repeatedly explained, an amendment is insufficient or frivolous if it would not survive a motion to dismiss. *See, e.g., Whitaker v. Ciena Corp.*, RDB-18-0044, 2018 WL 3608777, at *3 (D. Md. July 27, 2018) (citing *Tawaab v. Virginia Linen Service, Inc.*, 729 F. Supp. 2d 757, 770 (D. Md. 2010).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). While a complaint need not include "detailed factual allegations," it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff cannot rely on bald accusations or mere speculation. *Twombly*, 550 U.S. at 555.

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Hall v. DirectTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). However, a court is not required to accept legal conclusions drawn from those facts. *Iqbal*, 556 U.S. at 678. "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably

infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

## ANALYSIS

Plaintiff's proposed First Amended Complaint (ECF No. 34-2) ("PFAC") would transform the nature of this lawsuit. The PFAC would add four new plaintiffs: Eugene C. Curran, Jr. ("Curran"), the alleged sole LLC member of North Charles, and three limited liability companies of which he is also the sole member, Victory Management, LLC; Victory Realty, LLC; and Victory Capital, LLC, (the "Victory Entities") (collectively with North Charles and Curran, the "Plaintiffs"). (Pl.'s Mem. 2, ECF No. 34-1; PFAC ¶¶ 2, 4-6.) The PFAC would also add four additional claims to the breach of contract claim (Count I): tortious interference with contractual relationships (Count II); tortious interference with prospective advantage (Count III); injurious falsehood (Count IV); and malicious use of process (Count V). (Pl.'s Mem. 2; PFAC ¶¶ 69-103.) Finally, the PFAC would remove the request for specific performance and instead request damages resulting from Sonabank's failure to perform its contractual obligations. (Pl.'s Mem. 2.) Defendant objects to most of the proposed amendments as futile, arguing that Plaintiff has strained unsuccessfully to stretch North Charles's contract claim into a host of frivolous claims involving various new parties.[1] (ECF No. 35.)

### I.     Plaintiff's Request to Add Curran as a Party to Count I.

---

[1] Sonabank does not oppose North Charles's proposed amendments to Count I (breach of contract) "insofar as North Charles seeks to clarify that its earlier claim for specific performance is now moot, and it now seeks only monetary damages under this claim." (Def.'s Resp. 3-4.) Although this amendment is unopposed, it will not be permitted. This Court has determined that the PFAC is futile, and this litigation will not be advanced by amending the Complaint to retract only one form of requested relief.

The PFAC would add Curran as a party to North Charles' breach of contract claim (Count I) against Sonabank arising from its alleged breach of its contract with North Charles. Defendant argues that Curran does not have standing to bring a breach of contract claim against it because his status as a member of 401 North Charles, LLC does not render him a party to the Note, which sets forth the obligations of the parties and was attached to Plaintiff's Original Complaint.[2] (Def.'s Mot. at 9, ECF No. 35; Promissory Note, ECF No. 1-2.)

Generally, only a party to a contract may enforce that contract. *Copiers Typewriter Calculators, Inc. v. Toshiba Corp.*, 576 F. Supp. 312, 322 (D. Md. 1983). Individual members of an LLC are not parties to the LLC's contracts and cannot bring actions to enforce them. *See Hosack v. Utopian Wireless Corp., et al.*, DKC-11-0420, 2011 WL 1743297, at *4 (D. Md. May 6, 2011) (holding that the member of an LLC was not a party to the LLC's contracts); *Baron Financial Corp. v. Natanzon*, 471 F. Supp. 2d 535, 540 (D. Md. 2006) (explaining that members of an LLC cannot bring tortious interference claims because they are not parties to the LLC's contracts). In this case, the Note clearly indicates that it binds 401 North Charles, LLC, not Curran. (ECF No. 1-2, at 1.) Although it appears to be signed by Curran, he has done so only as a "member" of North Charles, LLC. (ECF No. 1-2, at 3.) Accordingly, Curran cannot bring his own breach of contract claim under Count I[3] and his Amendment is futile.

---

[2] When the allegations of a Complaint contradict attached documents, the documents prevail. *See Makowski v. Bovis Lend Lease, Inc.*, RDB-10-1844, 2011 WL 1045635, at *2 (D. Md. March 17, 2011) (citing *Fare Deals, Ltd. v. World Choice Travel.com, Inc.*, 780 F. Supp. 2d 678, 683 (D. Md. 2001) ("When the bare allegations of the complaint conflict with any exhibits or other documents, whether attached or adopted by reference, the exhibits or documents prevail.")).

[3] Curran's alleged status as a guarantor also does not permit him to enforce the Note. *See Wincopia Farms, LP v. G&G, LLC*, WDQ-11-1159, 2011 WL 6440004, at *3 (D. Md. Dec. 15, 2011) ("Under Maryland law, a guaranty is a contractual agreement, independent from the promissory note. Accordingly, the guarantor is not a party to the principal obligation."), *aff'd sub nom. In re Wincopia Farms, LP*, 499 F. App'x 233 (4th Cir. 2012) (quotations and citations omitted). To the extent that a guarantor has standing to pursue a wrong "against itself," this Court finds that Plaintiff has failed to allege this sort of wrong. *See Wincopia Farms, LP v.*

## II. Plaintiff's Request to Add Claims of Tortious Interference with Contractual Relationships (Counts II) and Tortious Interference with Prospective Advantage (Count III).

In addition to the contract claim (Count I), the PFAC would add two tort claims against Sonabank: tortious interference with contractual relationships (Count II) and tortious interference with prospective advantage (Count III). Under Count II, North Charles, Victory Realty, LLC, and Curran allege that Sonabank refused to accept satisfaction of all amounts owed to it, thwarting their efforts to refinance with another bank and obtain assets to purchase real property located at 3455 Wilkens Avenue, Baltimore, Maryland 21229, part of the St. Agnes Hospital Campus ("St. Agnes"), from Tsunami II, LLC. (PFAC at ¶¶ 37, 76.) In Count III, North Charles, Victory Capital, LLC, Victory Realty, LLC, and Curran allege that Sonabank's failure to perform its contractual duties sent shockwaves into a host of other business pursuits, hurting potential business ventures in New Jersey and India. (PFAC at ¶¶ 82-93.) Sonabank's breach of contract allegedly caused the breakdown of the St. Agnes deal, prevented Plaintiffs from obtaining refinancing, thwarted Curran's efforts to become partner in an expansion of the Do-it-Best hardware store franchise in India, and prevented him from buying out an investment owner of real property in Stone Harbor, New Jersey. (*Id.* at ¶¶ 46, 50, 82-93.) Under Count III, Plaintiffs also allege that Sonabank engaged in tortious conduct separate and distinct from breaching its contracts: Sonabank allegedly published "false and wrongful information" and "wrongfully fil[ed] a foreclosure action" which caused it reputational harm and interfered with its business prospects. (*Id.* at ¶¶ 83-84.) These allegations are repeated and elaborated upon in Count IV (injurious falsehood) and Count V

---

*G&G, LLC*, 2011 WL 6440004, at *3 n.8.

(malicious use of process) which are brought only on behalf of Curran.

Below, this Court addresses the reasons why each Plaintiff fails to state a claim under Counts II and III. Despite these separate analyses, however, Counts II and III are ultimately futile because Maryland law generally prohibits a contracting party to pursue tort damages stemming from a breach of contract. Furthermore, a single member of an LLC may not bring a host of tort claims on his own behalf, and behalf of other LLCs of which he happens to be a member, to rectify a breach of contract against an LLC.

**A. North Charles's Claims under Counts II and III are futile.**

North Charles's tort claims under Count II are futile because they stem purely from Sonabank's alleged breach of contract. To the extent that Count III also relies on Sonabank's alleged breach of contract, this claim is also futile. Under Maryland law, "a breach of contract does not typically give rise to an action in tort." *Hartz v. Liberty Mut. Ins. Co.*, 269 F.3d 474, 476 (4th Cir. 2001). Stated another way, "where the essence of a relationship is contractual and the essence of the claimed dereliction by a defendant is failure to perform the contract, a cause of action arising from such dereliction is not available in tort but is available only in contract." *Parks v. CAI Wireless Sys. Inc.*, 85 F. Supp. 2d 549, 556 (D. Md. 2000). This general rule is reflected in the economic loss doctrine, which "prohibits a plaintiff from recovering tort damages for what in fact is a breach of contract." *Cash & Carry America, Inc. v. Roof Solutions, Inc.*, 223 Md. App. 451, 466, 117 A.3d 52, 60 (2015).

Plaintiff objects to the application of this familiar rule, referring this Court to *Jacques v. First Nat'l Bank*, 307 Md. 527, 515 A.2d 756 (1986), which determined that a bank owed to its customer a duty of reasonable care in the processing and determination of a home mortgage

loan. *Jacques*, 515 A.2d at 756. The case arose from a home loan application filed by Robert and Margaret Jacques (the "Jacques") with First National Bank (the "Bank") after the pair had entered into a residential sales contract that required them to obtain outside financing in the amount of $112,000.00. *Id.* at 756. The contract further required the Jacques to accept whatever loan they could obtain at an agreed rate of interest. *Id.* at 763. After filing their application, the Bank contacted the Jacques and notified them that they only qualified for a $41,000.00 loan. *Id.* at 757. The Jacques then turned to another bank, which offered a $100,000.00 loan after receiving the same application information submitted to the Bank. *Id.* Due to a sudden and dramatic escalation in interest rates, however, the Jacques were forced to settle on the Bank's $41,000.00 loan and secure personal loans by other means. *Id.* The Jacques filed suit against the Bank, and a jury found that it was negligent. *Id.* at 758. The Bank appealed, arguing that it did not owe a duty of care to the Jacques in processing the loan application. *Id.*

To determine whether the Jacques were permitted to bring a tort claim against the Bank, the Court of Appeals closely examined the special relationship between the parties. The Court observed that the sales contract's financing requirements, which were integrated into the Jacques' loan application, were "rather extraordinary" and left the Jacques "particularly vulnerable and dependent upon the Bank's exercise of due care." *Id.* at 762. In discussing the Jacques' reliance on the Bank to obtain financing for their new home, the Court alluded to attorney-client and doctor-patient relationships. *Id.* at 763. With these observations, the Court determined that the Bank owed a duty of care to these particularly vulnerable prospective homeowners. *Id.* at 756. The Court took pains to prevent the misapplication of its new rule

by explicitly cabining its holding to the "particular facts of this case." *Id.*

In the roughly thirty years that have elapsed since *Jacques* was decided, numerous opinions have recognized that its rule is narrow. *See, e.g.*, *Lawyers Title Ins. Corp. v. Rex Title Corp.*, 282 F.3d 292, 294 (4th Cir. 2002) (describing *Jacques* as a "narrow exception" to Maryland's general rule that has not been applied to litigation between sophisticated parties); *Architectural Systems, Inc. Gilbane Bldg., Co.*, 974 F.2d 1330, 1992 WL 214446, at *5 (4th Cir. Sept. 8, 1992) (distinguishing *Jacques* as involving "particularly vulnerable" plaintiffs uniquely dependent on a bank); *Spaulding v. Wells Fargo Bank, N.A.*, 920 F. Supp. 2d 614 (D. Md. 2012) (recognizing that the Court of Appeals in *Jacques* took "painstaking care to carve out a narrow exception to the general rule that Maryland does not recognize negligence actions that arise solely out of a contractual relationship"); *G&M Oil Co. v. Glenfed Financial Corp.*, 782 F. Supp. 1078, 1083 (D. Md. 1989) (distinguishing *Jacques* as relying on special factors, like the vulnerability of the plaintiff-homeowners).

In this case, North Charles's tort claims are futile because it relies on the same alleged conduct to support both its breach of contract claim and its tort claims. The special circumstances of *Jacques*, which permitted tort claims arising from a breach of contract, are not present here. Unlike the Jacques, who were ordinary homebuyers seeking a fair mortgage loan from a bank, North Charles represents that it is a corporate entity pursuing international business ventures. It has not alleged that it approached Sonabank in a "particularly vulnerable" position like the Jacques, who had informed the Bank that they were bound by contract to proceed to settlement with whatever loan they could obtain at a specified interest rate. As permitting North Charles to pursue contract claims arising from Defendant's breach of

contract would violate Maryland law, its tort claims are futile.

This does not end the inquiry, however, because in Count III North Charles has also alleged that Sonabank committed tortious interference by publishing false information about Sonabank and knowingly instituting wrongful foreclosure actions against it. As this Court has recognized, plaintiffs may pursue tort actions arising from a Defendant's breach of duties that are "independent of that arising out of the contract itself." *Tribalco, LLC v. Hue Technology, Inc.*, JFM-11-935, 2011 WL 3821074 (D. Md. Aug. 26, 2011) (quoting *Pease v. Wachovia SBA Lending, Inc.*, 416 Md. 211, 6 A.3d 867, 889 (2010). North Charles's allegation that Sonabank committed tortious interference with prospective advantage by publishing "false and wrongful information" (PFAC ¶ 83) under Count III implicates a duty independent of those Sonabank owed under its contracts. *See Tribalco*, 2011 WL 3821074 at *7 (finding that the economic loss doctrine barred tort claims arising from a breach of contract, but did not bar Tribalco's tort claims arising from the Defendant's disparaging remarks made to Tribalco's partners).

Nevertheless, North Charles has failed to state a claim for tortious interference with prospective advantage. Under Maryland law, tortious interference with prospective advantage requires (1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss. *Putsche v. Alley Cat Allies, Inc.*, 2018 WL 784615, at *14-15 (D. Md. Feb. 2, 2018) (citing *Audio Visual Assocs., Inc. v. Sharp Elecs. Corp.*, 210 F.3d 254, 261 (4th Cir. 2000). The wrongful or unlawful conduct this tort requires includes "common law torts and violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and

the institution or threat of groundless civil suits or criminal prosecutions in bad faith." *Putsche*, 2018 WL 784615, at *15 (citing *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 271 (Md. 1994).

To allege tortious interference with prospective advantage, North Charles claims that Sonabank "published to persons in Borrower's business community false and wrongful information that harmed and degraded Borrower's credit reputation. These actions by Sonabank proximately caused lasting harm to Borrower's reputation and relations with the investment community in which Borrower does business." (Compl. ¶ 83.) North Charles also alleges that Sonabank, "knowing the harm this would inflict on Borrower . . . exacerbated [Sonabank's business problems] by wrongfully filing a foreclosure action." (*Id.* at ¶ 84.) These allegations are expanded upon in Count IV (injurious falsehood) and Count V (malicious prosecution).

The allegations supporting these claims are insufficient to state a claim for tortious interference with prospective advantage because North Charles has not alleged that Sonabank made the publications or instituted a foreclosure action in a calculated effort to damage North Charles's businesses.[4] Although North Charles has made additional allegations concerning the alleged false publications and wrongful foreclosure action in Counts IV and V, these allegations do not save North Charles's claims. In a conclusory fashion, Plaintiffs allege in

---

[4] Additionally, the PFAC does not seem to allege that North Charles had other business prospects which could be thwarted by Sonabank. For example, the St. Agnes property was allegedly pursued by Curran and Victory Realty, LLC (PFAC at ¶¶ 37-45); the Do-it-Best partnership was Curran's opportunity (*Id.* at ¶¶ 46-49); and Curran had a chance to acquire the Stone Harbor property (*Id.* at ¶¶ 50-51). Although the PFAC alleges that "Borrower" had "prospective business advantages and economic interests," it does not allude to any other business engaged in by 401 North Charles, LLC besides purchasing property located at 401 North Charles Street. (*Id.* at ¶ 10.)

Counts IV and V (brought only on behalf of Curran, and not on behalf of North Charles) that Sonabank "acted with malice" and that its actions were "willful, malicious, and intended to injure" *Curran*.[5] (PFAC ¶¶ 96, 98, 103.) These "threadbare recitals of the elements of a cause of action," made on behalf of a different Plaintiff, do not save North Charles's claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

### B. Curran's Claims under Count II are futile.

Defendant argues that Curran has failed to state a claim for tortious interference with contractual relationships because Curran was not a party to the St. Agnes contract and the St. Agnes contract was never breached. To state a claim for tortious interference with contractual relationships, Defendant must allege: (1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff." *180s, Inc. v. Gordani U.S.A., Inc.*, 602 F. Supp. 2d 635, 639 (D. Md. 2009) (quoting *Ultrasound Imaging Corp. v. Am. Soc'y of Breast Surgeons*, 358 F. Supp. 2d 475, 479 (D. Md. 2005).

Curran's claim of tortious interference with contractual relationships fails because Curran did not have a contract with Tsunami II, LLC. Curran's claim is premised on an alleged interference with a contract to obtain the St. Agnes property. (PFAC ¶ 78.) The PFAC suggests that Curran personally entered into this contract with Tsunami II, LLC. (*Id.* at ¶ 41.)

---

[5] Under Counts IV and V, the PFAC confusingly refers to the injured party as "Plaintiffs," "Borrower," "Plaintiff(s)," and "Plaintiff." Yet, the headings accompanying Counts IV and V suggest that the claims are only brought by Curran. To the extent that Plaintiffs are alleging that Sonabank acted with malice toward Curran and all of his affiliated corporate entities named in the PFAC, including North Charles, this Court finds this conclusory allegation unsupported by any factual assertions. Accordingly, such an allegation would not survive a motion to dismiss and is futile.

Curran, however, was not a party to this contract.[6]  The contract document is titled "Purchase and Sale Agreement between Tsunami II, LLC as seller and Victory Realty, LLC as purchaser." (ECF No. 35-3, at 2.)  The contract reiterates that the parties to the contract are Tsunami II, LLC and Victory Realty, LLC. (*Id.* at 3.)  Furthermore, Although Curran's signature line on the contract notes that he is a "Managing Member" of Victory Realty, LLC, this title does not render him a party to the contract.  *See Hosack*, 2011 WL 1743297, at *4 (D. Md. May 6, 2011) ("Even though Geist signed the agreement [as a Managing Member] he is not a party to it.")

In Reply, Curran does not contend that he was a party to the contract.  Rather, he argues that he has sufficiently alleged that he was "an intended beneficiary to the contract between Victory Realty, LLC and Tsunami II, LLC." (Pl.'s Reply 7-8.)  Curran is a third-party beneficiary to the contract if the contract was "intended for his benefit and it clearly appears that the parties intended to recognize him . . . as the primary party in interest and as privy to the promise." *CR-RSC Tower I, LLC v. RSC Tower I, LLC*, 429 Md. 387, 457, 56 A.3d 170, 212 (Md. 2012) (quoting *120 W. Fayette St., LLLP v. Mayor of Balt.*, 426 Md. 14, 35, 43 A.3d 355, 368 (Md. 2012).  It is not enough to allege that the contract "merely operates to [Curran's] benefit." *120 W. Fayette St., LLLP*, 43 A.3d at 368.  The crucial inquiry in determining whether Curran is a third-party beneficiary to the contract is "whether the pertinent provisions in the contract were inserted . . . to benefit him." *See Allen v. Bank of Am., N.A.*, 933 F. Supp. 2d 716, 726 (D. Md. 2013) (quoting *CR-RSC Tower I, LLC*, 56 A.3d at 212).

---

[6] This Court may consider this document as it is incorporated in and integral to the PFAC. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) ("A court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits."). Plaintiff has not challenged this document's authenticity.

To show that he has sufficiently alleged his status as an intended third-party beneficiary to the contract, Curran does not direct this court to a pertinent contractual provision or to a specific allegation in the PFAC. Rather, Curran directs this court "generally" to paragraphs 69 through 81 of the PFAC. (Pl.'s Reply 8.) These paragraphs and the remaining portions of the PFAC do not give rise to an inference that Curran was an intended third-party beneficiary to the contract. The PFAC alleges that Curran was personally involved in negotiating the contract with Tsunami II, LLC, but there is no indication that the parties to the contract specifically intended to benefit Curran or inserted provisions in the contract for his unique advantage. Accordingly, Curran's claims under Count II are futile because the PFAC does not include sufficient factual allegations to support his third-party beneficiary theory.

Curran's claims under Count II fails for another reason: he has not alleged that a third party (in this case, Tsunami II, LLC) breached the contract. As previously explained, to properly allege a claim of tortious interference with contractual relationships, Curran must allege breach of contract by a third party. *180s, Inc.*, 602 F. Supp. 2d. at 639 (quoting *Ultrasound Imaging Corp.*, 358 F. Supp. 2d at 479. Curran, however, has only alleged that he was "forced to terminate the purchase contract [for the St. Agnes property] in order to protect his deposit." (PFAC ¶ 41.) With this allegation, Curran appears to assert that he—not a third party— breached and/or terminated the contract to protect his interests. In Reply, Curran argues that he has nevertheless properly alleged a breach of contract because he was "left no alternative but to terminate the contract to protect his interests and mitigate his damages." (Pl.'s Reply 9.) Curran has not provided legal support for the contention that his allegedly justified breach of contract satisfies the elements of this tort, which has traditionally required a *third party* to

breach the contract. *See, e.g.*, *Mixter v. Farmer*, 215 Md. App. 536, 548, 81 A.3d 631, 638 (Md. Ct. Spec. App. 2013) ("A claim for tortious interference with contract requires that the defendant know of an existing contract and engage in improper conduct to induce a third party's breach of that contract.") (citing *Orfanos v. Athenian Inc.*, 66 Md. App. 507, 520-21, 505 A.2d 131 (1986)). Accordingly, Curran's claims under Count II are futile.

### C. Curran's Claims under Count III are futile.

Sonabank argues that Curran has failed to state a claim for tortious interference with prospective advantage because he has not alleged that his dealings with North Charles were intended or calculated to cause damage to his business. (Def.'s Resp. 12-13.) Sonabank additionally argues that his alleged injuries were merely an "incidental effect" of Sonabank's dispute with North Charles and that Sonabank's actions did not proximately cause Curran's alleged injuries. (*Id.* at 13-14.) Under Maryland law, tortious interference with prospective advantage requires (1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss. *Putsche v. Alley Cat Allies, Inc.*, PWG-17-255, 2018 WL 784615, at *14-15 (D. Md. Feb. 2, 2018) (citing *Audio Visual Assocs., Inc. v. Sharp Elecs. Corp.*, 210 F.3d 254, 261 (4th Cir. 2000). "To establish causation in a wrongful interference action, the plaintiff must prove that the defendant's wrongful or unlawful act caused the destruction of the business relationship which was the target of the interference." *View Point Medical Systems, LLC v. Athena Health, Inc.*, 9 F. Supp. 3d 588, 615 (D. Md. 2014) (quoting *Med. Mut. Liability Soc. v. B. Fixon Evander & Assocs.*, 339 Md. 41, 54, 660 A.2d 433, 439 (1995).

Curran has failed to properly allege that Sonabank's conduct targeted him or was intended to thwart his business prospects in India and New Jersey. The PFAC does not even allege that Sonabank had knowledge of Curran's alleged opportunities with Do-it-Best or the Stone Harbor property. Instead, the PFAC does little more than allege that Sonabank was aware that "Borrower" (a term the PFAC uses to refer to both North Charles and Curran) was "in the ongoing business of buying, investing and developing businesses and land for the purpose of profiting from such investments." (PFAC ¶ 85.) This does not suggest, however, that Sonabank was aware of any particular business dealing Curran was pursuing or sought to thwart his economic opportunities by breaching its contract with North Charles. Accordingly, Curran's claims under Count III would not survive a motion to dismiss and are futile.[7]

### D. The Victory Entities' Claims under Counts II and III are futile.

The Victory Entities' Claims under Counts II and III fail for similar reasons. As previously discussed, Victory Realty, LLC has not stated a claim for tortious interference with contractual relationships (Count II) because the PFAC alleges that Curran—and not a third party, as the law requires—withdrew from the St. Agnes contract. As to the claim of tortious interference with prospective advantage (Count III), the PFAC does not adequately allege that Sonabank's dealings with North Charles "targeted" the business dealings of the Victory Entities. *View Point Medical Systems, LLC*, 9 F. Supp. 3d 588, 615 (D. Md. 2014) (quoting *Med.*

---

[7] Because this Court finds that the PFAC's allegations do not sufficiently allege that Sonabank targeted Curran's business dealings, this memorandum opinion will not analyze at length Defendant's argument that Curran has failed to establish proximate cause under Claim III. This Court, however, finds these arguments persuasive: it does not seem plausible that, based on the allegations of the Complaint, Curran's loss of business in New Jersey and India was the "natural, proximate, and direct" effect of Sonabank's alleged breach of contract with North Charles in Maryland. *Lyon v. Campbell*, 120 Md. App. 412, 431, 707 A.2d 850, 860 (1998) (quoting *Medical Mut. v. Evander*, 339 Md. 41, 54-55, 660 A.2d 433, 439-40 (1995).

*Mut. Liability Soc.*, 660 A.2d at 439).

**III. Plaintiff's Request to add Claims of Injurious Falsehood (Count IV) and Malicious Use of Process (Count V).**

Under the PFAC, Curran brings a claim of injurious falsehood (Count IV) and malicious use of process (Count V). Under Count IV, Curran alleges that Sonabank published false information about "Borrower's title to the relevant property" and "slandered and libeled Borrower's credit record." (PFAC at ¶ 95.) Under Count V, Curran alleges that Sonabank initiated foreclosure proceedings for "an illegal and improper purpose to satisfy its illegitimate effort to obtain unlawful fees from Borrower." (*Id.* at ¶ 100.) The use of the term "Borrower," a collective term used by the PFAC to refer to North Charles and Curran, conceals the fact that the property at issue in this case is alleged to belong to North Charles (not Curran) and that the foreclosure action was pursued against North Charles (not Curran). Curran's status as an LLC member does not permit him to pursue an injurious falsehood claim stemming from representations made about North Charles's title or credit record. *See, e.g., Norman v. Borison*, 192 Md. App. 405, 421-23, 994 A.2d 1019, 1028-29 (Md. Ct. Spec. App. 2010) (holding that the owner of an LLC does not have standing to pursue defamation claim stemming from defamatory statements made about the LLC). Curran also cannot pursue malicious use of process claims as a result of Sonabank's foreclosure action against North Charles, because Curran was not a party to that proceeding. *See, e.g., Gittens v. Thieblot Ryan, P.A.*, RDB-12-1652, 2013 WL 2103668, at *4 (D. Md. 2013) (explaining that malicious use of process claims require an allegation that the underlying lawsuit terminated in favor of the plaintiff (quoting *Fontell v. Hassett*, No. 10-cv-01472-AW, 2011 WL 4632579, at *5 (D. Md. Oct. 3, 2011)). Accordingly, Counts IV and V would not survive a motion to dismiss and are futile.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion to Amend the Complaint (ECF No. 34) is DENIED.

A separate Order follows.

Dated:  December 13, 2018

_____/s/_____
Richard D. Bennett
United States District Judge